```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| v. | **Case No. 06 CR 586** |
| **MICHAEL HARRIS,** | **Judge Harry D. Leinenweber** |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

As discussed at the September 6, 2023 conference and for the reasons stated herein, the Court grants Defendant Michael Harris's ("Harris") Motion for Compassionate Release (Dkt. No. 673) filed pursuant to the First Step Act. Harris's sentence as to incarceration is reduced to time served.

### I. BACKGROUND

In 2006, a jury indicted Defendant Michael Harris on multiple counts related to participation in a scheme to rob a drug courier with a firearm. The crime was part of a sting tactic undertaken by the Bureau of Alcohol, Tobacco, and Firearms ("ATF") targeting individuals with the opportunity to rob a non-existent drug stash house. More detailed descriptions of this now-abandoned tactic are laid out in the parties' briefings as well as this Court's prior opinions. *See United States v. White,* 2021 WL 3418854, at

*1 (N.D. Ill. Aug. 5, 2021). An ATF agent approached Harris and his co-defendants about the opportunity to rob 15 kilograms of cocaine at a site purportedly used by a cartel. (Gov. Response, Dkt. No. 680 at 3.) In a surreptitious recording, Harris indicated he had experience with home invasions and confirmed his co-conspirators had weapons. (*Id.*) On the day of the planned robbery, the informant led the crew to a storage facility, where ATF agents arrested them. (*Id.*) At the time of his arrest, Harris was armed. (*Id.*)

Harris and three co-defendants were first tried together in 2007, and another judge in this district imposed a sentence of twenty-five years. After an appeal, they were re-tried in this Court, which in 2012 sentenced Harris to 25 years of incarceration, the mandatory minimum (for someone with a prior conviction (state simple possession) who was carrying a firearm while committing a drug trafficking offense regarding fifteen kilograms of cocaine, and the government filed a § 851 enhancement). In 2015, the Seventh Circuit affirmed the defendants' convictions and sentences. This all came years before the United States Attorney's Office discontinued the stash house sting tactics. In 2018, the Government offered favorable plea deals to the pending stash house defendants and stopped prosecuting the schemes. Harris has served 17 years of his 25-year sentence.

This Court denied Harris's first Motion for Compassionate Release (Dkt. No. 586) upon finding that Harris had failed to exhaust his administrative remedies. (Dkt. No. 618.) In his subsequent Motion for Reconsideration (Dkt. No. 626), which the Court denied (Dkt. No. 634) for reasons regarding COVID risk mitigation in light of the availability of vaccines, he stated he had since exhausted remedies. Today, the Government does not dispute that Harris has exhausted all available administrative remedies.

On June 9, 2022, Harris again moved for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), as amended by Section 603 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). (Dkt. No. 673.) The Government filed a Response (Dkt. No. 680), and Harris filed a Reply (Dkt. No. 681). The Court now decides Harris's Motion.

## II.  LEGAL STANDARD

Under the First Step Act, the Court may reduce an inmate's term of imprisonment after he has exhausted all "administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). In deciding a motion for compassionate release,

the Court must consider whether: (1) "extraordinary and compelling" reasons warrant the reduction in sentence; and (2) the sentence reduction is consistent with the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Gunn,* 980 F.3d 1178, 1179–80 (7th Cir. 2020); *United States v. Thacker,* 4 F.4th 569, 756 (7th Cir. 2021). The Sentencing Commission's policy statements regarding what constitutes extraordinary and compelling reasons to warrant compassionate release predate the First Step Act and apply only to motions brought by the BOP itself, and not by inmates. *Gunn,* 980 F.3d at 1180. As a result, district courts may use the policy statements as a guide in their determination but are not constrained by the statements. *Id*. at 1181. The Seventh Circuit has further instructed district courts to consider the "totality of the circumstances," such that factors that may not individually warrant compassionate release could do so when viewed collectively. *United States v. Vaughn,* 62 F.4th 1071, 1072–73 (7th Cir. Mar. 15, 2023) (Easterbrook, J.).

The U.S. Sentencing Commission has recently updated its policy statements, though the amendments will not become effective until November 1, 2023, absent Congressional action. Amendments to the Sentencing Guidelines, April 27, 2023 (available at *https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf*). The statements

will retain the "other reasons" catchall and expand the list of extraordinary and compelling reasons that warrant sentence reductions. *Id*. at 2. Given the amendments expand rather than cabin the justifications for compassionate release, this Court is assured that Harris's compassionate release would be justified under the amended policy statements as well.

### III. <u>DISCUSSION</u>

Satisfied that Harris has exhausted administrative remedies, the Court turns to whether extraordinary and compelling reasons exist that warrant a reduction in Harris's sentence, and whether compassionate release comports with the sentencing factors under U.S.C § 3553(a).

#### A. Extraordinary and Compelling Circumstances

Harris argues that the circumstances of his arrest and conviction for participation in the stash house schemes warrant his compassionate release. Harris argues that he would not have even been charged today, let alone receive a 25-year sentence. He emphasizes the sentencing disparities the operation and the Government's subsequent disavowal created between himself, and defendants offered favorable plea deals, as well as between himself and stash house defendants who have been compassionately released in the past few years.

- 5 -

District courts may now consider extraordinary and compelling reasons for compassionate release other than those set forth in the comments of U.S.S.G. 1B1.13, as laid out above. *See Gunn,* 980 F.3d at 1181*. Gunn* affords district courts discretion to determine whether an extraordinary and compelling reason exists at all.

Several federal courts, including this one, have considered sentencing disparities both within and outside of the stash house context when granting compassionate release. *See United States v. White,* 2021 WL 3418854, at *1 (N.D. Ill. Aug. 5, 2021); *United States v. McCoy,* 981 F.3d 271, 286 (4th Cir. 2020) (affirming sentence reduction based on length of defendants' sentences and the disparity between their sentences and those that Congress deemed appropriate in the First Step Act); *United States v. Liscano,* 2021 WL 4413320, at *7 (N.D. Ill. Sept. 27, 2021) (Durkin, J.) ("Adding to this injustice is that Liscano was among the least culpable members of the eleven-person conspiracy, and yet he was the only member to receive an above-guideline sentence and is only one of two still incarcerated to this day"); *United States v. Conley,* 2021 WL 825669, at *5 (N.D. Ill. Mar. 4, 2021) (finding, *inter alia,* "compassionate release was warranted based on the injustice and unfairness of a prosecution and resultant sentence" in a false stash hose conviction). Judge Kennelly, in his recent decision *Logan,* determined that continued imprisonment based on

now-disavowed stash house stings constituted on its own an extraordinary and compelling reason under section 3582(c)(1)(A), sentencing disparities aside. *United States v. Logan,* 2023 WL 2771165, at *4 (N.D. Ill. Apr. 4, 2023).

The Seventh Circuit's parameters for district courts' discretion in determining an extraordinary and compelling reason do not apply here. In *United States v. Thacker,* the Seventh Circuit foreclosed relief based on arguments that the "prescribed sentence is too long, rests on a misguided view of the purposes of sentencing, reflects an outdated legislative choice by Congress, and the like." 4 F.4th 569, 574 (7th Cir. 2021). It also foreclosed relief based on a subsequent non-retroactive statute. *Id.* at 576. Harris's motion relies neither on the mere length of his sentence, nor on any non-retroactive statute or other change in law. *See Logan,* 2023 WL 2771165, at *5 (rejecting *Thacker* as foreclosing compassionate release in stash house case). In any event, the amendments to the First Step Act effective November 1, 2023, permit district courts to consider a non-retroactive change in sentencing law for "unusually long sentences" when deciding compassionate release motions. *See* Amendments to the Sentencing Guidelines at 5.

Harris's Motion is precluded neither by *United States v. Brock,* 39 F.4th 462, 466 (7th Cir. 2022), nor *United States v. Martin,* 21 F.4th 944, 946 (7th Cir. 2021). In *Brock,* the Seventh

- 7 -

Circuit determined that subsequent judicial decisions did not constitute extraordinary and compelling reasons to grant compassionate release. 39 F.4th at 466. The Seventh Circuit in *Martin* held that claimed errors in sentencing could not on their own be reasons to grant compassionate release, as this would circumvent normal appeal and collateral appeal procedures. 21 F.4th at 946. Harris's Motion rests neither on a judicial decision nor on a sentencing error. The context of Harris's conviction prior to the Government's discontinuation of stash house operations is what warrants compassionate release. This context did not exist at the time of his sentencing.

This Court agrees with Judge Kennelly that continued incarceration for crimes the Government no longer prosecutes or investigates constitutes an extraordinary and compelling reason to grant compassionate release under the statute. *Logan,* 2023 WL 2771165, at *4. Yet even if that is not the case, the resulting sentencing disparities, and Harris's rehabilitation bolster Harris's Motion such that it is warranted. After the Government discontinued stash house prosecution, stash house defendants who accepted favorable plea deals in 2018. Harris was not afforded the benefit of the Government's disavowal and plea deals.

In other stash house cases in this district, including ones before this Court, judges have granted compassionate release in

part on reliance of a sentencing disparity between the defendant and a more culpable co-defendant who received a lesser sentence or served less time. *See White,* 2021 WL 3418854, at *4; *Logan,* 2023 WL 2771165, at *5; *Conley,* 2021 WL 825669, at *4. This Court does not find it necessary for a sentencing disparity to exist between Harris and his co-defendant for compassionate release to be warranted. The stash house context and the resulting sentencing disparities between Harris and other stash house defendants are sufficient. Further, in none of the aforementioned cases was the reason warranting compassionate release limited to the disparity between Harri and his co-defendant. Regardless, this Court already granted compassionate release to Harris's co-defendant. *See United States v. Blitch*, No. 06 CR 586-2, slip op. at 3-4 (N.D. Ill. Apr. 13, 2022).

Finally, Harris's rehabilitation supports his compassionate release. *United States v. Peoples,* 41 F.4th 837, 842 (7th Cir. 2022) (successful rehabilitation may be considered among other factors warranting a reduced sentence). The Government concedes Harris's rehabilitation is "commendable" (Response, Dkt. No. 680 at 14), and this Court agrees. He has worked for his prison community: BOP has trusted Harris with employment in recreation, and Harris has helped with COVID-19 sanitation efforts "without hesitation" (Mot. Ex. B, Dkt. No. 673-2 at 1). He has also fostered

healthy relationships with the community outside the prison (*see* Mot., Dkt. No. 673 at 30): in particular, he has strengthened ties with his family (*see id.*), and he has continued his education, having earned several certificates, and completed coursework, including towards his GED (*see id.*; Mot. Ex G, Dkt. No. 273-8 at 2-5).

For the reasons stated above, this Court finds sufficient reasons for a sentence reduction on Harris's petition for compassionate release.

### B. Sentencing Factors under 18 U.S.C. § 3553(a)

The Court turns now to whether a reduction in sentence would comport with the sentencing factors under 18 U.S.C § 3553(a). These factors include the imprisoned person's history and characteristics; the nature and circumstances of the crimes; the seriousness of the crimes; respect for the law; adequate deterrence; protecting the public from harm; providing him with necessary services and treatment; the need to avoid sentencing disparities. *Id*.

Here, the factors counsel towards release. His history includes risk factors (namely, an often-chaotic household, his parents' separation, his father's neglect, and being shot at age 14 in a drive-by shooting supposedly to protect his brother and subsequent health complications). (*See* Mot. at 32—34.) And yet,

today, Harris shows resilience: he acknowledges the seriousness of his past criminal history, specifically the crime for which he is currently serving time. (*See generally* Mot.) As discussed briefly above, he has while incarcerated demonstrated the ability to cultivate responsible behaviors that he can continue to develop outside of prison. (*Id.*) He has maintained a consistent job while in prison and nurtures his familial and community relationships The five years of supervised release will remain in place to ensure the public's safety through Harris's safe reintegration into society. Continued incarceration could hardly provide deterrence because, as discussed, the Government no longer brings charges for participation in stash house stings. Further, Harris has prepared a thorough release plan which includes his intended employment in the trucking industry. Already serving as a mentor to his nieces, nephews, and cousins, he aspires to volunteer for the 6x6 Brotherhood Foundation, a program designed to help young men focus on their education and futures. (Mot. at 42.) Harris expects that he can access better healthcare outside of prison that will help him manage health challenges related to his previous gunshot injury, ageing, and other health risks. At this point, continued incarceration — when Harris has already served over two-thirds of his sentence for a crime the Government no longer charges or investigates — could conceivably undermine rather than strengthen

the rule of law. Finally, it is not lost on the Court that avoidance of disparate sentencing is a sentencing factor, which for reasons stated herein counsels towards release.

## IV. CONCLUSION

For the reasons stated herein, and as discussed at the September 6, 2023 conference, the Court grants Michael Harris's Motion for Compassionate Release under 18 U.S.C § 3582 and reduces the Defendant's prison sentence to time served. This Order is stayed for fourteen (14) days for the verification of Harris's residence, to finalize his release plan, to make appropriate travel arrangements, and to ensure Harris's safe release. The five-year term of supervised release and the previously ordered conditions of release shall remain in place.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 10/17/2023